IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| GRADY BRYAN, III and KRISTI BRYAN, | : : : : |
| Plaintiffs, | : : |
| v. | :  CASE NO.: 7:20-CV-00253 (WLS) |
| DAVID SWISHER, *et al.*, | : : : |
| Defendants. | : |

## ORDER

Before the Court is Defendants Greenwood Motor Lines and David Swisher's ("Defendants") Motion for Partial Dismissal. (Doc. 48). Therein, Defendants request the Court either dismiss Intervenor Georgia Department of Administrative Service's (GDAS) Complaint for Damages as to themselves only or realign GDAS as a defendant because GDAS's intervention as a plaintiff conflicts with the supplemental jurisdiction statute, 28 U.S.C. § 1367. (Docs. 48; 51, at 2).

For the reasons expressed herein, Defendants' Motion (Doc. 48) is **DENIED**, and GDAS is **DISMISSED without prejudice** as a Party to the instant action.

## RELEVANT BACKGROUND & PROCEDURAL HISTORY

On the evening of August 24, 2018, Plaintiff Grady Bryan was injured in a vehicle accident that occurred on the U.S. Highway 84 bypass/Georgia State Road 38 in Thomasville, Georgia. (Doc. 1, at 2). Plaintiff Bryan was performing maintenance on a traffic light in a suspended lift bucket attached to a Georgia DOT utility-boom truck when the truck was struck by a tractor trailer. (*Id.* at 2; Doc. 1-2, at 4–5). The driver of the tractor

1

trailer, Defendant David Swisher, was driving on behalf of motor carrier Defendant Greenwood Motor Lines. (Doc. 1, at 2). Plaintiff Grady Bryan was thrown from the utility-boom truck's bucket on impact, causing him to fall approximately twenty-five (25) feet to the ground. (*Id.*)

Plaintiff Grady Bryan alleges he sustained serious physical and mental injuries from the fall, which have a great effect on his ability to work and care for himself. (*Id.*) Plaintiff Grady Bryan seeks damages in excess of $10.8 million including medical expenses, lost past and future wages, lost earnings capacity, and past and future pain and suffering. (*Id.* at 3). Additionally, Plaintiff Kristi Bryan seeks an unspecified award for compensatory damages based on a loss of consortium due to her husband's injuries. (*Id.*)

Plaintiffs initially filed their complaint in the State Court of Thomas County, Georgia on December 1, 2020. (Docs. 1; 1-1). On December 24, 2020, Defendants filed a "Joint Notice of Removal," removing the case to this Court pursuant to the removal of civil actions statute, 28 U.S.C. § 1441, and based on diversity jurisdiction 28 U.S.C. § 1332 because Plaintiffs are seeking damages in excess of $75,000, and there is complete diversity as Plaintiffs are Georgia citizens, Defendant Swisher is a Florida citizen, and Defendant Greenwood is a citizen of South Carolina, where it has its place of incorporation, and a citizen of Ohio, which is its principal place of business. (Doc. 1).

On July 15, 2021, GDAS filed its Motion to Intervene. (Doc. 22). Therein, GDAS asserted that is has a statutory right to intervene pursuant to O.C.G.A. § 34-9-11.1(b) and argued that GDAS has paid workers' compensation benefits of $364,611.85 to Plaintiff, which created a "legal liability against [both] Plaintiff and Defendants." (Docs. 46, at 3; 22-1, at 2–3). GDAS further asserted that it will intervene as a plaintiff because its right to recover

2

workers' compensation subrogation lien from Plaintiff only arises when Plaintiff recovers for his injuries against Defendants pursuant to O.C.G.A. § 34-9-11.1. (Doc. 46, at 2–4). No Party filed a response or objection to GDAS's Motion to Intervene. (*See generally* the docket). The Court ultimately granted GDAS's Motion to Intervene without objections from Parties. (Doc. 27). Accordingly, GDAS filed its intervenor's complaint against Plaintiffs and Defendants. (Doc. 46).

Subsequently, Defendants filed the instant Motion (Doc. 48) to partially dismiss GDAS's claims against themselves.

## PARTIES' ARGUMENTS

Defendants make two arguments. Either (1) the Court dismiss GDAS's intervenor complaint as to Defendants because GDAS's right to intervene is "limited" in that it can recover only from Plaintiff unless and until Plaintiff is fully and completely compensated (in other words, clarifying and ensuring that GDAS does not have independent action against Defendants); and/or (2) the Court realign GDAS as an intervening defendant rather than a plaintiff because GDAS is "not a citizen" for purposes of diversity jurisdiction, and if GDAS remains as an intervening plaintiff, the supplemental jurisdiction would bar a federal court from exercising jurisdiction. (Doc. 48).

Subsequently, GDAS filed its Response (Doc. 50), opposing Defendants' Motion (Doc. 48) by making two arguments.[1] First, GDAS argues that its intervenor complaint under Rule 24 is not subject to the supplemental jurisdiction statute, 28 U.S.C. § 1367.

---

[1] GDAS titled its Response (Doc. 50) as "Objection to Defendant's Motion for Partial Summary Judgment" without explaining how and why Defendant's Motion (Doc. 48) is a summary judgment motion. In any event, the Court makes a note to clarify and to state that it does not see Defendant's Motion (Doc. 48) as a summary judgment motion.

3

(Doc. 50, at 3). Further, GDAS contends that it is a citizen for the purposes of diversity jurisdiction because it is a "body politic and corporate" and not the arm of the State. (*Id.* at 2). Second, GDAS argues that it should remain aligned as a plaintiff because its goals align more with Plaintiffs' because it cannot enforce the subrogation lien unless and until Plaintiffs are first "fully and completely" compensated. (*Id.* at 4–6).

## DISCUSSION

The Court first addresses Defendants' request to realign GDAS as a defendant. GDAS opposes Defendants' request, arguing that its interest in this action is "substantially aligned" with Plaintiff's interest. (Doc. 49, at 5). GDAS contends that its goals would be "furthered" only by the success of Plaintiffs recovering damages against the Defendants, and thus, contends that it cannot be considered a defendant (*Id.* at 5–6).

Courts must, for jurisdictional purposes, align parties "whose interests coincide respecting the primary matter in dispute." *Prudential Real Est. Affiliates, Inc. v. PPR Realty Inc.*, 204 F.3d 867, 873 (9th Cir. 2000) (citations omitted). Here, based on the record, the Court finds there is no valid reason to realign the Parties. To illustrate, GDAS's Intervenor Complaint (Doc. 46) does not contain claims that are defenses to Plaintiffs' claims. Moreover, GDAS is correct in that its interests substantially align with Plaintiffs' interests because GDAS wants Plaintiffs to fully and completely recover against Defendants in this action so that GDAS could subsequently recover its workers' compensation benefits from Plaintiffs. *See* O.C.G.A. § 34-9-11.1. Therefore, Defendants' request to realign GDAS as a defendant is **DENIED**.

Next, the Court turns to the issue of diversity jurisdiction. It is well-known that federal courts are courts of limited jurisdiction. Thus, federal courts may only hear cases

4

which the Constitution and the Congress of the United States have authorized them to hear. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Generally, federal subject matter jurisdiction requires a federal question under 28 U.S.C. § 1331 or diversity jurisdiction under 28 U.S.C. § 1332. And any action originally filed in state court may also be removed by a defendant to federal court if it meets the constitutional and statutory requirements for original federal jurisdiction. 28 U.S.C. § 1441(a). Here, Defendants removed the above-styled case to this Court based solely on diversity jurisdiction. (Doc. 1). Diversity jurisdiction requires the amount in controversy to be in excess of $75,000 and a complete diversity of parties, meaning that no plaintiff is a citizen of the same state as any defendant. 28 U.S.C. § 1332(a). Here, as noted above, Plaintiffs are Georgia citizens, Defendant Swisher is a Florida citizen, and Defendant Greenwood is a citizen of South Carolina, where it has its place of incorporation and is a citizen of Ohio, which is its principal place of business. Thus, at the time of removal, this Court had proper subject matter jurisdiction over the instant matter.

Furthermore, a district court may also exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) over additional claims that are part of the same case or controversy, including claims that involve joinder or intervention of other parties, once the court has jurisdiction over some of the claims in an action, such as the instant case.

Here, GDAS intervened as a matter of right under Federal Rule of Civil Procedure 24(a). GDAS sought to intervene pursuant to O.C.G.A. § 34-9.11.1, which permits an employer or workers compensation insurer to intervene in an employee's suit when an employee, who sustains injuries on the job, sues a third party that has legal liability for that injury. (Doc. 22). In such a case, the employer is granted a subrogation lien and the

5

employer may recover worker's compensation benefits it paid to the employee on the condition that Plaintiffs are first "fully and completely" compensated. O.C.G.A. § 34-9-11.1. Here, no Party filed an objection or a response to GDAS's Motion for Intervention. After conducting an analysis of relevant factors as to GDAS's Motion to Intervene (Doc. 22), the Court determined that GDAS was entitled to protect its subrogation interests and participate in the litigation as to the economic and non-economic circumstances of Plaintiff's loss and recovery and ultimately granted GDAS's Motion to Intervene. (Doc. 27).

Thereafter, GDAS filed its Intervenor Complaint (Doc. 46) against both Plaintiffs and Defendants. In its Intervenor Complaint (Doc. 46), GDAS asserts, in part, that it is "a department of the State of Georgia and is authorized to maintain this action in all respects," and that it paid workers compensation to Plaintiff Bryan Grady for his injuries "under circumstances creating a legal liability against the Plaintiff and Defendants herein the amount of $364,611.85." (Doc. 46, at 2, 3).

Defendants then filed the instant Motion to Dismiss (Doc. 48), arguing the issue of subject matter jurisdiction, specifically contending that GDAS is not a "citizen" for purposes of diversity jurisdiction because it is an arm of the State of Georgia. In addition, Defendants cite to the supplemental jurisdiction statute, which provides that district courts shall not have jurisdiction over claims by parties who intervened as plaintiffs under Rule 24 if it is inconsistent with the requirements of diversity jurisdiction.

Conversely, GDAS argues that it is indeed a "citizen" for diversity purposes because it is a "body politic and corporate" of the State of Georgia and not an alter-ego or an arm of Georgia. (Doc. 49, at 2). To support its contention, GDAS argues that it was "created by

6

statute and manages State purchasing, contracts, and human resources administration" pursuant to O.C.G.A. § 50-5-1. (*Id.* at 2–3).

## I.     **GDAS Intervening as a Plaintiff Triggered Supplemental Jurisdiction**

The Court finds GDAS's argument that its intervenor complaint under Rule 24 is not subject to the supplemental jurisdiction statute, 28 U.S.C. § 1367, is incorrect. (Doc. 50, at 3). Defendants' instant Motion to Dismiss (Doc. 48) raises the issue of whether the Court has subject matter jurisdiction over GDAS's claims. The question of subject matter jurisdiction can be raised at any time. *Henderson* ex rel. *Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). Additionally, the Court has a duty to examine the issue of subject matter jurisdiction *sua sponte*. *E.g.*, *Kelly v. Harris*, 331 F.3d 817, 819 (11th Cir. 2003) ("[F]ederal courts always have an obligation to examine *sua sponte* their jurisdiction before reaching the merits of any claim.").

GDAS's argument that it is not subject to supplemental jurisdiction is incorrect. (Doc. 49, at 1, 3). Defendants correctly point out that because the Court's sole jurisdiction for this case is diversity jurisdiction, GDAS's intervention as a plaintiff under Rule 24 triggered supplemental jurisdiction. (Doc. 48, at 4). The supplemental jurisdiction statute, Section 1367, provides that a federal court with original jurisdiction over a claim may also have supplemental jurisdiction "over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy," as well as "claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). Yet, as here, where original jurisdiction of a case is founded solely on diversity jurisdiction, "the district courts shall not have supplemental jurisdiction . . . over claims by . . . persons [or parties] . . . seeking to intervene as plaintiffs under Rule 24 . . . when exercising

7

supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of Section 1332," which is diversity jurisdiction. 28 U.S.C. § 1367(b) (emphases added).

Here, GDAS intervened as a plaintiff under Rule 24(a). Thus, under supplemental jurisdiction, this means that GDAS must satisfy the requirements of diversity jurisdiction, which are the amount in controversy and diversity of citizenship. Here, Defendants are disputing GDAS's citizenship. Specifically, Defendants are contending that GDAS is not a "citizen" for diversity jurisdiction purpose because it is the arm or alter ego of the State of Georgia. (Doc. 48, at 4). Conversely, GDAS argues that it is a citizen for the purpose of diversity jurisdiction. (Doc. 49, at 2).

## II. GDAS is Not a Citizen for Diversity Purposes

GDAS argues that it is a political subdivision or corporate of the State of Georgia, and not the arm or alter ego of the State. (Doc. 49, at 2). It argues that it was created by statute to manage state purchasing, contracts, human resources administration, including workers' compensation under Georgia Workers' Compensation Act pursuant to O.C.G.A. § 50-5-1 et seq. (*Id.* at 2–3). It also says it "regularly sues and is sued" under diversity jurisdiction in federal courts. (*Id.* at 3).

To this, Defendants argue that the "facts do not support a finding that GDAS is a separately formed municipal corporation rather than a part of the State of Georgia." (Doc. 51, at 6). Defendants also argue that under the Eleventh Circuit, the test used to determine whether a public entity is a citizen is the same one that is used to determine whether a public entity has Eleventh Amendment immunity. (*Id.* at 7). Defendants contend that GDAS enjoys Eleventh Amendment immunity and is thus not a citizen for diversity purposes. (*Id.* at 7–8).

8

There is "no question" that a state is not a citizen for purposes of the diversity jurisdiction. *Moor v. Alameda Cnty.*, 411 U.S. 693, 717 (1973). In other words, an entity that is the arm or alter ego of a state is not a citizen of that state for diversity purposes. *Id.* at 717–18. On the other hand, a political subdivision of a state or a "body politic and corporate" of a state is a citizen for diversity purposes. *Id.* This is based on the principle that corporations are considered to be citizens of the state in which they are formed and are thus subject to the diversity jurisdiction of federal courts. *Id.* at 718. Taken together, a party that is an arm or alter ego of the state would destroy the requirements of diversity jurisdiction because it is not a citizen. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 412 (11th Cir. 1999).

To determine citizenships of entities for the purpose of federal diversity jurisdiction, the Eleventh Circuit uses the Eleventh Amendment immunity test, although the question of diversity jurisdiction is distinct from that of immunity. *Univ. of S. Ala.*, 168 F.3d at 412; *Coastal Petroleum Co. v. U.S.S. Agri-Chemicals, A. Div. of U.S. Steel Corp*, 695 F.2d 1314, 1317–18 (11th Cir. 1983); *Ga. Dep't of Transp. v. MCC Telephony of Ga., Inc.*, 1:07-CV-2530-CAP, 2008 WL 11407265, at *3 (N.D. Ga. Jan. 14, 2008) ("[T]he Eleventh Circuit has held that the Eleventh Amendment immunity analysis is applicable to determinations of citizenship for the purpose of diversity jurisdiction."); *Ala. State Univ. v. Baker & Taylor, Inc.*, 998 F. Supp. 1313, 1316 (M.D. Ala. 1998) ("[T]he Eleventh Circuit has recognized the similarity of analysis for determining whether a public entity is an instrumentality of the state for purposes invoking Eleventh Amendment immunity and diversity-of-citizenship jurisdiction."). This is because under the Eleventh Amendment immunity, the agencies or instrumentalities of a state are immune from suit in federal court. *Univ. of S. Ala.*, 168 F.3d at

412; *Cassady v. Hall*, 892 F.3d 1150, 1153 (11th Cir. 2018) (finding that a Georgia inmate's suit against GDAS fell "within the Eleventh Amendment's embrace," and thus, Eleventh Amendment immunity applied, which made GDAS immune to the action); *Int'l Bus. Machs. Corp. v. Evans*, 453 S.E.2d 706, 708–09 (Ga. 1995) (finding, in part, that GDAS is generally protected by sovereign immunity).

Additionally, the Supreme Court of Georgia has held that the Georgia Constitution provides sovereign immunity "to the state and all of its departments and agencies" and such immunity of the State of Georgia, its departments, and its agencies "can only be waived by an Act of the General Assembly, which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." *Ga. Dept. of Nat. Res. v. Ctr. Sustainable Coast, Inc.*, 755 S.E.2d 184, 188–90 (Ga. 2014) (citing to Georgia Constitution, Art. I, Sec. II, Par. IX(e)); *see Robinson v. Ga. Dept. of Transp.*, 966 F.2d 637, 639 (11th Cir. 1992); *see also MCC Telephony of Ga., Inc.*, 2008 WL 11407265, at *3 (finding Georgia Department of Transportation ("GDOT"), which is created pursuant to Georgia statute, like GDAS, is not a citizen for purposes of federal diversity because the Eleventh Circuit previously found GDOT to be subject to the Eleventh Amendment immunity because GDOT is an arm of the State of Georgia).

Based on Georgia caselaw and Eleventh Circuit precedent, the Court agrees with Defendants and finds that GDAS is not a citizen for purpose of federal diversity because GDAS enjoys Eleventh Amendment immunity as an arm the State of Georgia. Thus, the

Court finds it lacks subject matter jurisdiction over GDAS's claims. Accordingly, GDAS is **DISMISSED without prejudice** as a Party in this above-styled matter.[2]

## **CONCLUSION**

For aforementioned reasons, Defendants' Motion for Partial Dismissal (Doc. 48) is **DENIED**, and GDAS is **DISMISSED without prejudice** as a Party to the instant action.

**SO ORDERED**, this __28th__ day of August 2023.

>   /s/ W. Louis Sands
> **W. LOUIS SANDS, SR. JUDGE**
> **UNITED STATES DISTRICT COURT**

---

[2] To be clear, the Court does not deprive GDAS of, nor dispute, GDAS's statutory right to intervene or proceed against Plaintiffs, consistent with GDAS's statutory rights under O.C.G.A. § 34-9-11.1.

11