IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| GRADY BRYAN, III and KRISTI BRYAN, | : : : : |
| Plaintiffs, | : : |
| v. | : CASE NO.: 7:20-CV-00253 (WLS) : |
| DAVID SWISHER, *et al.*, | : : |
| Defendants. | : |

## ORDER

Before the Court are Defendants Greenwood Motor Lines and David Swisher's ("Defendants") Motion to Exclude Expert Testimony (Doc. 57-2). For reasons stated below, Defendants' Motion (Doc. 57-2) is **DENIED**.

## RELEVANT PROCEDURAL HISTORY

On the evening of August 24, 2018, Plaintiff Grady Bryan was injured in a vehicle accident that occurred on the U.S. Highway 84 bypass/Georgia State Road 38 in Thomasville, Georgia. (Doc. 1, at 2). Plaintiff Bryan was performing maintenance on a traffic light in a suspended lift bucket attached to a Georgia DOT utility-boom truck when the truck was struck by a tractor trailer. (*Id.* at 2; Doc. 1-2, at 4–5). The driver of the tractor trailer, Defendant David Swisher, was driving on behalf of motor carrier Defendant Greenwood Motor Lines. (Doc. 1, at 2). Plaintiff Grady Bryan was thrown from the utility-boom truck's bucket on impact, causing him to fall approximately twenty-five (25) feet to the ground. (*Id.*)

1

Plaintiffs initially filed their complaint in the State Court of Thomas County, Georgia on December 1, 2020, against Defendants American Lighting, David Swisher, and Greenwood. (Docs. 1; 1-1). Plaintiff Grady Bryan alleges negligence against all Defendants, claiming that he sustained serious physical and mental injuries from the fall, which have a great effect on his ability to work and care for himself. (*Id.*) Plaintiff Grady Bryan seeks damages in excess of $10.8 million including medical expenses, lost past and future wages, lost earnings capacity, and past and future pain and suffering. (*Id.* at 3). Additionally, Plaintiff Kristi Bryan seeks an unspecified award for compensatory damages based on a loss of consortium due to her husband's injuries. (*Id.*)

Defendants removed the case to this Court in December of 2020. (Doc. 1). On December 31, 2020, Defendants filed a Motion to Dismiss Its Pre-Answer Motion for Partial Dismissal (Doc. 4) and their Answer (Doc. 5). The Court granted Defendants' Motion to Dismiss (Doc. 4) as to Paragraph 42 of Plaintiff's independent negligence claims against Defendant Greenwood, and dismissed Paragraph 42 without prejudice, after finding that Paragraph 42 was facially plausible. (Doc. 25).

In November of 2021, American Lighting was dismissed from the instant case, pursuant to the Court's Order (Doc. 29) that granted a "Stipulation of Dismissal as to Defendant American Lightning."

Defendants Swisher and Greenwood filed the instant Motion to Exclude Expert Testimony (Doc. 57-2) on June 1, 2023. Plaintiffs subsequently filed their Response (Doc. 60-3) to Defendants' Motion. Thereafter, Defendants filed their Reply (Docs. 64).

2

## **LEGAL STANDARD**

Federal Rule of Evidence 702, which controls the admission of expert testimony provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) The testimony is based on sufficient facts or data;
>
> (c) The testimony is the product of reliable principles and methods; and
>
> (d) The expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

Rule 702 compels the district courts to perform the critical "gatekeeping" function as to the admissibility of expert scientific evidence and technical expert evidence. *Daubert v. Merrell Dow. Pharms. Inc.*, 509 U.S. 579, 589 n.7, 597 (1993); *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). Thus, district courts are required to conduct "exacting analysis" of the foundations of expert opinions to ensure they meet the Rule 702 standards of admissibility. *Id.* In determining the admissibility of expert testimony under Rule 702, the Eleventh Circuit engages in a "rigorous three-part inquiry," where the district courts must consider whether:

> (1) The expert is qualified to testify competently regarding the matters he intends to address;
>
> (2) The methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and

3

> (3) The testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260.

Although there may be some overlap among these three prongs—qualification, reliability, and helpfulness, the courts "must take care not to conflate them." *Id.* The Advisory Committee Notes provides that "the rejection of expert testimony is the exception rather than the rule." *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 850 (11th Cir. 2021) (citing FED. R. EVID. 702 Advisory Committee's Note to 2000 Amendments). "The amendment is broad enough to permit testimony that is the product of competing principles or methods in the same field of expertise." *Id.*

As to the first prong, the Eleventh Circuit has observed that experts may be qualified in various ways, including scientific training or experience in a field. *Frazier*, 387 F.3d at 1261. Indeed, qualifications are "by no means a guarantor of reliability." *Id.* (quoting *Quiet Tech. DC-8 v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341–42 (11th Cir. 2003)).

The second prong, reliability, is a criterion separate from the qualification prong as reliability "remains a discrete, independent, and important requirement for admissibility." *Id.* The district court must assess whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue. *Frazier*, 387 F.3d at 1262. An "expert's method need not be perfect, nor must he apply it perfectly." *Banta Props., Inc. v. Arch Specialty Ins. Co.*, No. 10-CV-61485, 2011 WL 13096149, at *4 (S.D. Fla. Dec. 20, 2011) (citation omitted). That is, a minor flaw in an expert's reasoning or slight modification of an otherwise reliable method will not render an expert's opinion per se inadmissible. *See Quiet Tech.*, 326 F.3d at 1346. The

4

exclusion of the expert testimony is warranted if the "flaw is large enough" that the expert lacks good grounds for his conclusion. *Navelski v. Int'l Paper Co.*, 244 F.Supp.3d 1275, 1298 (N.D. Fla. 2017) (citation omitted).

As to the last prong, helpfulness, the courts look to see if the expert testimony concerns the matters that are beyond the understanding of the average lay person. *Frazier*, 387 F.3d at 1262. "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.* at 1262–63.

The purpose of the expert admissibility rules is to enlist the federal courts as gatekeepers. *Moore*, 995 F.3d at 850. But courts "must remain chary not to improperly use the admissibility criteria to supplant a plaintiff's right to a jury trial." *Id.* After all, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (quoting *Daubert*, 509 U.S. at 596).

Furthermore, the Eleventh Circuit reviews a district court's decisions regarding the admissibility of expert testimony and the reliability of an expert opinion for abuse of discretion. *Frazier*, 387 F.3d at 1258. The "deference that is the hallmark of abuse-of-discretion review" means that the Eleventh Circuit will not reverse an evidentiary decision of a district court "unless the ruling is manifestly erroneous." *Id.*; (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997)). The district courts enjoy "considerable leeway" in making these determinations. *Frazier*, 387 F.3d at 1258–59.

5

**DISCUSSION**

Defendants request the Court to exclude the testimony of Sean Alexander, an accident reconstructionist, who is retained by Plaintiff. (Doc. 57-2, at 1). Defendants contend that Alexander is a non-engineer who worked for a Georgia county sheriff's department for over 17 years and that he was contacted by Plaintiffs about a month after the accident. (*Id.* at 2). Defendants contend that Alexnader did not personally perform any inspections or take measurements, and as part of his expert work, he sent two (2) other individuals in his office, who are also non-engineers, former law enforcement officers, to inspect the accident scene. (*Id.*) Defendants also argue that Alexander only looked at Defendant Swisher's deposition and the police report that was provided to him to develop his opinions. (*Id.* at 5). Defendants also assert that Alexander is not qualified to testify that Defendant Swisher faced no vertical obstructions because he is not a human factor or visual perception expert. (*Id.* at 11). Defendants further contend that Alexander's methodology is not reliable because he did not have "all of the necessary evidence to form valid accident reconstruction opinions," and Alexander "assumed" that Plaintiff positioned his bucket in front of the traffic signal, and not behind it, when Plaintiff testified that his bucket was placed behind the traffic signal (*Id.* at 6, 13). Additionally, Defendants contend that Alexander's opinions will not assist the jury because Defendants argue that Alexander's calculations are "patently incorrect" as to the location of the impact and his opinion as to what Defendant Swisher could see. (*Id.* at 14).

Conversely, Plaintiffs contend that Alexander is qualified because he possesses 25 years of experience investigating accidents and 24 years of experience in a special Traffic Division of the Houston County Sheriff's Office. (Doc. 60-3, at 4). Plaintiffs also add that

6

Alexander has "actively participated in over 1,000 Accident Reconstructions," has "extensive experience" as a teacher, student, and trainer in the accident reconstruction field, is accredited by the Accreditation Commission for Traffic Accident Reconstruction, and has been retained as an expert "hundreds of times and has testified both as a consulting expert and also as a part of his law enforcement career." (*Id.*) Plaintiffs also contend that Defendants' argument that Alexander's methodology is unreliable fails as Plaintiffs state "with [] big old broad brush . . . [and] without substance" that Alexander lacked necessary facts, without identifying what those are. (*Id.* at 10). Plaintiffs also dispute Defendants' argument that Alexander's opinion will not help the jury. (*Id.* at 11). In particular, as to Defendants' argument that Alexander did not place the bucket behind the light in accordance with Plaintiff's deposition, Plaintiffs contend that a "review of Plaintiff's deposition reveals" that Plaintiff experiences "numerous memory issues" and that Defendant's own expert, Allen Powers, also stated that he did not consider any testimony in determining the location of the bucket at the time of the impact when he formed his expert opinion. (*Id.*).

I.  **Alexander's Qualification**

The Parties do not dispute Alexander's qualification regarding accident reconstruction. Indeed, a review of Alexander's deposition (Doc. 57-11) and report (Doc. 57-10) demonstrates that Alexander is qualified to testify competently regarding the matters he intends to address as accident reconstructionist. For instance, among other accomplishments, Alexander has investigated traffic collisions as a patrol officer, worked in the Houston County Sheriff's Office Traffic Division which involved working on "all serious injury, fatal, difficult, multiple and advanced knowledge/investigation needed traffic

7

crashes," has taken and studied several classes on accident reconstructions, completed all courses in the State of Georgia, participated in over "1,000 accident reconstructions," and is the President of C.A.R., Crash Analysis & Reconstruction LLC, in which he investigates and reconstructs motor vehicle crashes. (Doc. 57-10, at 4).

Defendants, however, contend that Alexander is not qualified to provide testimony as to human factors because he is not a human factors expert, and therefore, cannot opine that Defendant Swisher had the ability to determine GDOT vehicle's positional location within the interaction in proximity to the lights for at least 1,000 feet away. (Doc. 57-2, at 3–4). Defendants also argue that Alexander is not qualified to testify that Defendant Swisher faced "no vertical obstructions for a thousand feet that would have obstructed his view" or opine on Defendant Swisher's ability to "see and perceive at night." (*Id.* at 11). Additionally, Defendants contend that Alexander's assessment of the photographs taken in daytime with a non-full frame camera is erroneous because their expert Allen Powers explained the "potentially misleading nature of photographs" which are "zoomed in." (*Id.* at 14).

Upon full review of Alexander's deposition (Doc. 57-11) and his report (Doc. 57-10), the Court finds neither Alexander's report nor deposition focuses on human factors to the extent that it warrants exclusion of his testimony. To begin, the Court finds that the primary or main purpose of Alexander's report is to reconstruct the accident and show the alignment of the vehicles at the time of impact to demonstrate to the jury as to where the vehicles' positions were on the road because the jury may not be familiar with the area where the accident occurred. (*See generally* Doc. 57-10); (Doc. 57-11, at 11, 18, 22).

Importantly, when asked whether Alexander is "qualified to give an opinion about human factors and visual perception," Alexander replied that he is "to some extent" but that

8

he is "not offering opinions" on human factors or calculations as to human factors, but that his opinion "just show[s] that from [a] distance of a thousand feet, [one has] clear targets" and that ultimately, Defendant Swisher is the one who "has to tell the jury" what he saw before the collision. (Doc. 57-11, at 67–68). In fact, Alexander further testified that he is "not going to say whether [Defendant Swisher] should or should not" see targets or stimulus but that Alexander is merely opining, based on evidence, that there was "no vertical obstructions" from a thousand feet where Defendant Swisher was. (*Id.* at 68). Alexander also testified that he referred to some studies on reaction time and perception time in preparing the report but that he is not giving opinions about when or whether Defendant Swisher "should have recognized the flashing lights" at the time of the accident. (*Id.* at 70–71).

As for depth perception, Alexander testified that the pictures were taken at "100 foot increments starting at a thousand feet" and at "50 millimeters, which is the eye focal length of a persons' vision"—not necessarily Defendant Swisher's—and that the pictures were to "just show reference-wise . . . depth perception" or "what's available." (*Id.* at 19). And as to the camera not being a "full-frame," Alexander testified that the pictures are not meant to provide the jury with an idea of what Defendant Swisher would or should have seen if he was at a particular location but that the pictures are meant to simply show that there was "no physical obstructions" that "block[ed] his visions." (*Id.* at 19–21, 68).

Upon full review of Alexander's report and deposition, the Court finds that the main purpose of Alexander's opinion is to demonstrate the alignment or positions of the vehicles at impact and the distance and time necessary for the Peterbilt to move to avoid striking the bucket, which was where Plaintiff was located, at the time of the accident. Furthermore, Alexander made clear that he is not giving opinions on human factors or on whether

9

Defendant Swisher should have recognized the utility vehicle. (Doc. 57-11, at 67–72). Alexander testified that it is Defendant Swisher who must tell the jury about his visual perception when he was approaching Plaintiff at the time of the collision and that Defendant Swisher must be the one to testify as to whether he noticed or recognized the utility vehicle. (*Id.*) Alexander also made clear as to the limits of his methodology, what he is and is not offering opinions on, and how he reached his findings based on evidence available to him. The Court finds that Alexander is qualified as an expert on the subject of his opinions, which is accident reconstruction, and that he is not attempting to provide opinions as to human factors. If anything, when Alexander discusses human factors, he only does so marginally or in a way that is neither inappropriate nor exceeds his expertise as an accident reconstructionist. For instance, Alexander refers to a reaction time in a general sense only to the extent that it is pertinent to the subject of accident reconstruction. That is, not necessarily what Defendant Swisher would have or should have seen at a certain distance but to show the jury that, at the time of the accident, and based on the evidence and information provided, there were no physical obstructions in the area. (Doc. 57-11, at 20–21); *see Head v. Thrash*, No. 1:21-CV-2057-SEG, 2023 WL 3664442, at *7 (N.D. Ga. Mar. 31, 2023).

## II.     Reliability of Alexander's Report

Defendants contend that Alexander "assumed without a basis" that Plaintiff Bryan positioned the bucket in front of the traffic signal, "even though Plaintiff testified that he positioned his bucket behind or at the back of the traffic signal. (Doc. 57-2, at 56).

Conversely, Plaintiffs argue that a review of Plaintiff's own deposition indicates that he experiences "numerous memory issues related to the events surrounding his injury." (Doc. 60-3, at 11). Plaintiffs also contend that Alexander's report as to the location of the

bucket "is [still] the same distance" as the opinion of Defendants' expert regarding Plaintiff's location from the traffic signal. (Doc. 60-3, at 11).

As to Defendants' contention that Alexander "assumed without a basis" that Plaintiff positioned the bucket in front of the traffic signal, a review of Alexander's deposition shows that Alexander testified that the bucket could be either "in front or behind the light but [that] the tractor trailer position is [still] going to be the same." (Doc. 57-11, at 56). Accordingly, the Court finds that Alexander is not necessarily taking a stance on whether the bucket was placed in front or behind the light as he testified that it does not change the fact that the position of the tractor-trailer would not have changed. (*Id.* at 41, 43, 56).

As to Defendants' argument that Alexander only reviewed the police report and Defendant Swisher's deposition, the Court finds that Alexander's report includes a "laundry list" of items and references that Alexander reviewed to prepare and draft his expert report. (Doc. 57-10, at 2–3); (Doc. 57-11, at 13). Assuming arguendo Alexander did not review every deposition or document, Alexander's conclusions or opinions would be limited in nature, which may suggest that his opinions should be assigned less weight; as in, it does not necessarily suggest unreliability. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *see also Quiet Tech.*, 326 F.3d at 1345. After all, an expert opinion does not need to be sufficient, by itself, to support a jury finding on an ultimate issue. Defendants are free to cross-examine Alexander at trial if they want to attack the weight of his opinions or the factors that Alexander did not or may not have considered in reaching his opinions. Overall, the Court

11

finds that Alexander's opinion or methodology based on available evidence is not unreliable. (Doc. 57-11, at 38, 54, 67–72); (Doc. 57-10, at 5)

### III. Helpfulness of Alexander's Report to the Jury

Defendants contend that Alexander's opinion or report will confuse the jury because they argue that Alexander made "patently incorrect location of impact" and because he took daytime photographs with a non-full frame camera. (Doc. 57-2, at 14). On the other hand, Plaintiffs contend that Defendants make a "generalized, specious announcement that Alexander's opinions won't help the jury" without explaining precisely "why that is." (Doc. 60-3, at 11).

Upon review of Alexander's report and deposition, the Court finds that Alexander's opinions and findings are helpful to the jury, especially to provide demonstration and insight on the roadway where the accident occurred. Additionally, Alexander's accident reconstruction could be helpful to the jury in determining what occurred in determining the validity of Plaintiffs' claims. Thus, the Court does not find there are valid grounds for excluding Alexander's expert testimony.

### CONCLUSION

For aforementioned reasons, Defendants' Motion to Exclude Expert Testimony of Sean Alexander (Doc. 57-2) is **DENIED**.

**SO ORDERED**, this  6th   day of October 2023.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE
UNITED STATES DISTRICT COURT**

12